FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 0 7 2026

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Todd Blanche
Acting Attorney General of the United States
Jeremy J. Kelley
Assistant United States Attorney
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK ALAN BUCKNUM,<br><br>Defendant. | Case No.:  2:26-cr-0062-TOR<br><br>INFORMATION<br><br>Vio:  18 U.S.C. § 1343<br>　　　Wire Fraud<br><br>18 U.S.C. § 981(a)(1)(C)<br>Forfeiture Allegations |

The United States charges:

**GENERAL ALLEGATIONS**

1.     At all times relevant to this Information, Defendant PATRICK ALAN BUCKNUM was a resident of Wenatchee or East Wenatchee, Washington, in the Eastern District of Washington.

2.     Community Clinic Network ("CCN") is a company located in Wenatchee, Washington, in the Eastern District of Washington. CCN was formed in 2010 to manage health care payment contracts for a conglomerate of health care clinics spread across Washington.  CCN was formed to improve quality and achieve cost-savings in the care the health clinics provided.  CCN would enter contracts with

INFORMATION – 1

Medicaid Managed Care Organizations (MCOs) that shifted risk to CCN if costs were above a baseline cost, but CCN would receive money for cost savings. All costs of a given member, including clinic and hospital care were part of the risk pool.

3. Some owner clinics took distributions of shared savings from CCN, but generally left large balances in the control and custody of CCN. The funds were often viewed as rainy-day funds for most of the clinics. The funds were saved to protect from future volatility from losses that could be incurred by taking risk. The reserves were also needed for future growth of the organization and investment in other opportunities. There were also potential incentives for owner clinics to leave funds with CCN. For instance, the owner companies were able to count the funds as contingent receivables that were not listed on their balance sheets. CCN was also able to invest the funds on behalf of the owner companies.

4. From 2010 through 2016, Defendant BUCKNUM managed CCN's finances and operations while maintaining full-time employment as the Chief Executive Officer of Columbia Valley Community Health (CVCH). In 2017, Defendant BUCKNUM left CVCH for full-time employment at CCN. In 2017, Defendant BUCKNUM was employed as the Chief Executive Officer for CCN in Wenatchee, Washington, and also functioned as the Chief Financial Officer and Chief Operations Officer. Defendant BUCKNUM continued as the Chief Financial Officer and Chief Operations Officer for CCN until his departure in 2024.

5. As one of the signers on accounts, Defendant BUCKNUM had control of CCN's finances and could write checks and initiate wire transfers from CCN's financial accounts. CCN's board members regularly reviewed CCN's financial statements but entrusted management of CCN's financial activities primarily to Defendant BUCKNUM. Despite regular board meetings and annual external review of financial statements, Defendant BUCKNUM held a position of trust that allowed him relatively unfettered access to the tens of millions of funds stored with CCN.

INFORMATION – 2

## The Fraud Scheme

6.    Beginning in or about April 2017, Defendant BUCKNUM devised a scheme and artifice to obtain money from CCN's main checking account under false and fraudulent pretenses, representations, and promises.  Without the knowledge of or authorization from the CCN Board, Defendant BUCKNUM began to embezzle funds from the CCN account to his personal E*TRADE account, and then use the funds for trading stocks, options, and exchanged-traded funds ("ETFs").  Defendant BUCKNUM intended to make a profit on the trading, return the embezzled funds to CCN's account, and keep the difference.  Defendant BUCKNUM would also use some of the CCN funds in his E*TRADE account for personal benefit.  Distributions out of the checking account were covered up by making real transfers or by manipulating financial records to show transfers to and from CCN's Insured Cash Sweep ("ICS") account.[1]

7.    However, Defendant BUCKNUM had no prior experience trading stocks, options, or ETFs.  Social media influenced Defendant BUCKNUM's trading strategy, which was generally bearish and highly leveraged.  Due to Defendant BUCKNUM's poor trades, his losses of CCN funds quickly mounted, which resulted in Defendant BUCKNUM embezzling more funds from CCN in an attempt to recover the losses.

8.    In total, between 2017 and 2023, Defendant BUCKNUM embezzled approximately $30,390,686.52 from CCN's accounts to facilitate his scheme to engage in trading.  During that same period, Defendant BUCKNUM also transferred approximately $7,358,300.06 back into CCN accounts, resulting in a net loss of

---

[1] An ICS is a product offered by some financial institutions in which the institution will place deposits received from customers into interest-bearing accounts at other FDIC-insured banks in amounts below $250,000 to ensure full FDIC coverage while maintaining liquidity.  CCN used the ICS account as a savings account to earn interest on extra funds, typically .02% interest.

INFORMATION – 3

approximately $23,032,386.46 to CCN from funds embezzled to Defendant BUCKNUM's E*TRADE account.

9. From 2017 through 2023, to facilitate the scheme and artifice to defraud, Defendant BUCKNUM took money from CCN's accounts in random increments and placed it in his personal E*TRADE account. Defendant BUCKNUM's first two transfers from CCN's ICS account to his E*TRADE were Automated Clearing House ("ACH") transfers via interstate electronic wires for $10,000 and $100,000.

10. Defendant BUCKNUM also funded his E*TRADE account through checks drawn from CCN's primary checking account with US Bank. Defendant BUCKNUM would void the checks in CCN's accounting systems and electronically alter bank statements as needed to conceal his theft of CCN funds. Defendant BUCKNUM then transferred money, through the use of interstate wires, from CCN's ICS account to CCN's U.S. Bank checking account to ensure the checking account's balance remained constant and conceal his embezzlement. Defendant BUCKNUM was aware that the CCN board was more likely to review the balance of the checking account than the ICS account.

11. By 2019, Defendant BUCKNUM viewed the trading losses as insurmountable. Defendant BUCKNUM met with an attorney at that time but ultimately decided not to come forward then. In March 2023, Defendant BUCKNUM transferred $5,000,000 in CCN funds through a check deposited into his E*TRADE account as a final attempt to recover the lost trading funds. The attempt was ultimately unsuccessful.

12. On October 7, 2024, Defendant BUCKNUM, through his legal counsel, voluntarily terminated his employment and relationship with CCN. In his resignation, Defendant admitted embezzling and losing approximately $20,000,000 of CCN's money.

INFORMATION – 4

13. In addition to embezzling funds for use in speculative trading, Defendant BUCKNUM's scheme also involved embezzling CCN funds for other personal uses. On or about November 4, 2021, Defendant BUCKNUM embezzled CCN funds through the use of interstate wires to purchase a 2021 Tesla Model 3, VIN 5YJ3E1EC6MF099342, for $77,925.51 from Tesla, Inc. These funds were spent from Defendant BUCKNUM's E*TRADE account and are traceable to embezzled CCN funds.

14. On or about June 11, 2024, Defendant BUCKNUM embezzled CCN funds to purchase a Cobalt 220 boat serial number FGE22170J405 and cobalt boat trailer serial number 4FBBS222851013349 for $33,004.59 from Valley Marine through check number 2219 written from CCN's U.S. Bank checking account.

15. On or about June 23, 2024, Defendant BUCKNUM embezzled CCN funds to purchase a 2024 Chevrolet Silverado EV, VIN No. 1GC40ZEL0RU300510, from Jet Chevrolet for $103,800.75 through check number 2234 written from CCN's U.S. Bank checking account.[2] Defendant BUCKNUM subsequently changed the check entry in CCN's accounting system to falsely and fraudulently show the check was issued for "CDW Server Upgrades."

16. On or about August 16, 2024, Defendant BUCKNUM embezzled $1,199,210.57 from CCN through the use of interstate wires to purchase gold coins. Defendant BUCKNUM later sold the gold coins for a slight profit and on February 20, 2025, used $1,287,838.16 in proceeds from selling the gold to purchase four-hundred 1 oz American Gold Eagle Coins of random years, seventy 1 oz Platinum Coins, and sixty-six 2024 1 oz American Silver Eagle coins.

17. In total, accounting for all Defendant BUCKNUM's transfers to Defendant BUCKNUM's E*TRADE account, transfers back to CCN accounts, and use of CCN funds for personal expenses as set forth above, Defendant BUCKNUM

---

[2] Defendant made a separate additional $5,000 downpayment on the vehicle.

INFORMATION – 5

caused a loss to CCN of $24,368,427.37.

<u>COUNT 1</u>

18.    The allegations alleged in paragraphs 1 through 17 of this Indictment are incorporated as though realleged herein.

19.    On or about August 16, 2024, in the Eastern District of Washington and elsewhere, the Defendant BUCKNUM, for the purposes of executing the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce a payment of $1,199,210.57 from CCN's US Bank Account ending in 5158 to SD Bullion to purchase gold coins, all in violation of 18 U.S.C. § 1343.

NOTICE OF FORFEITURE ALLEGATIONS

The allegations contained in this Information are hereby re-alleged and incorporated herein by this reference for the purpose of alleging forfeitures.

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of an offense in violation of 18 U.S.C. § 1343, Wire Fraud, as set forth in this Information, the Defendant PATRICK BUCKNUM shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.  The property to be forfeited includes, but is not limited to, the following:

<u>MONEY JUDGMENT</u>

$24,368,427.37 in United States currency, representing the amount of proceeds obtained by the Defendant from the Wire Fraud violation.

<u>BANK ACCOUNTS</u>

-    Any and all funds held in Chase Bank Account ending in 3395

<u>VEHICLES/CONVEYANCES</u>

-    a 2024 Chevrolet Silverado EV, VIN No. 1GC40ZEL0RU300510;

-    a 2021 Tesla Model 3, VIN 5YJ3E1EC6MF099342; and,

INFORMATION – 6

- a Cobalt 220 boat serial number FGE22170J405 and cobalt boat trailer serial number 4FBBS222851013349.

COINS

- four-hundred 1 oz American Gold Eagle Coins of random years;

- seventy 1 oz Platinum Coins; and,

- sixty-six 2024 1 oz American Silver Eagle coins

If any of the property described above, as the result of any act or omission of Defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

DATED this 7th day of May, 2026.

Todd Blanche
Acting Attorney General


Jeremy J. Kelley
Assistant United States Attorney

INFORMATION – 7